UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
Floyd Sims and
Cynthia Sims,
    Debtors.                                    No. 13 - 05-20101 - SR

**MEMORANDUM OPINION ON ELIGIBILITY**

This matter[1] came before the Court for trial on the merits of Lee County State Bank's ("LCSB") motion to dismiss the bankruptcy on the grounds that Debtors' debt exceeds the limits of 11 U.S.C. § 109(e)[2]. The Court finds that the Debtors' debts

---

[1] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A); and these are findings of fact and conclusions of law as required by Rule 7052 F.R.B.P. This chapter 13 case was filed prior to the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-08, 119 Stat. 23, and therefore the changes enacted by that legislation are not applicable to this case.

[2] That section provided as of the date of the filing of the petition as follows:
> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title.

Section 104 provides for the figures to be adjusted every three years to reflect changes in the Consumer Price Index for all Urban Consumers, beginning April 1, 1998. The most recent change was on April 1, 2007. The new limits are $336,900 for unsecured debts and $1,010,650 for secured debts. See Judicial Conference
(continued...)

exceed the limitations imposed by § 109(e) and that this case must be dismissed.

**FINDINGS OF FACT**

Floyd Sims and Cynthia Sims ("Debtors") own stock in Floyd Sims Pipeline Construction, Inc. ("FSPC"). Between 1995 and 1998 FSPC executed and delivered to LCSB several promissory notes and a "Business Manager Agreement." The Debtors and Martha Cone and Tom Cone ("Cones")[3] guaranteed payment of all of FSPC's debts to LCSB. FSPC defaulted on its obligations and LCSB filed suit against FSPC, the Debtors and the Cones in the Fifth Judicial District Court, Lea County ("Lea County Case"), on July 1, 1999 seeking judgment against the Defendants jointly and severally in the amount of $440,007 plus interest and attorneys fees. Exhibit 37.

Debtors filed a joint Chapter 7 proceeding in the District of New Mexico on July 14, 1999, case 7-99-14093-MR. LCSB filed an adversary proceeding against the Debtors under Sections 523(a)(2) and (6). After trial the Court dismissed the adversary proceeding as to the Section 523(a)(6) claims. In a Memorandum

---

[2](...continued)
of the United States, Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(b) of the Code, 72 Fed. Reg. 7082 (Feb. 14, 2007).

[3]The record is unclear if the Cones were partial owners of FSPC, but that fact is not relevant for the purposes of this case.

Page -2-

Opinion and accompanying judgment entered on September 6, 2001, the Court found against the Debtors on the Section 523(a)(2) claims and awarded LCSB judgment in the amount of $329,732 plus attorney's fees in the amount of $55,063. Adversary 99-1199-M docs 95 and 96. Neither the Memorandum Opinion or the Judgment state that interest will accrue. LCSB obtained a transcript of judgment on April 11, 2002, which for its "Rate of Interest" states "None awarded."

On September 18, 2001, the Debtors filed a joint Chapter 13 proceeding in the District of New Mexico, case 13-01-16327-MR. LCSB filed a motion to dismiss on Section 109(e) grounds. The Court conducted a trial on the motion to dismiss on March 27, 2002, and dismissed the case because the Debtors' debts exceeded the limit allowed by Section 109(e).

Meanwhile, the Lea County Case was continuing. Martha Cone had filed her own bankruptcy, so the remaining defendant was Tom Cone. On November 14, 2000, the state court entered Findings of Fact and Conclusions of Law (Exhibit 36), and on November 30, 2000 entered judgment against Tom Cone in the amount of $360,424, bearing interest at 8.75% from November 14, 2000 (Exhibit F). On July 3, 2003, the state court entered a further award against Tom Cone for attorney's fees in the amount of $15,268, plus taxes of $916, plus costs of $770 and taxes thereon of $36, for an additional total award of $16,990.

Page -3-

Case 05-20101-s13    Doc 70    Filed 04/03/07    Entered 04/03/07 11:26:15 Page 3 of 15

After receiving its judgments, LCSB initiated collection actions. LCSB received a payment on behalf of Debtors from Wells Fargo Bank on May 2, 2002, then started receiving regular wage garnishments from the Debtors on October 4, 2002 (Exhibit 23). LCSB started receiving royalty garnishments on behalf of Tom Cone on November 20, 2003 (Exhibit 34).

LCSB accounted for the Debtors' judgment as per Exhibit 23. It shows an opening balance of $384,795 on September 7, 2001, it computes interest at 3.43%[4] through the date of each payment, then subtracts each payment received. From September 7, 2001 to the date of bankruptcy Debtors paid, through garnishments, $61,110. Interest of $54,806 had accrued, and the principal balance was reduced to $378,491. This is the amount claimed due by LCSB. LCSB did not credit any of the Cone garnishments towards the Debtors' judgment.

LCSB accounted for the Cone judgment as per Exhibit 34. It shows an opening balance of $361,806[5] as of November 14, 2000, it computes interest at 8.75% through the date of each payment, then subtracts each payment as received. On July 3, 2003, $16,989 of

---

[4] The yield on 1-year Treasury constant maturities on September 7, 2001 was 3.43%. See http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt (last visited March 26, 2007).

[5] The judgment was for $360,424. The $1,382 discrepancy is not explained by the exhibits, but the amount is immaterial to the outcome of this case.

attorney fees, costs and taxes were added.  This accounting differs from the Debtors' accounting in Exhibit 23 because it also has a column denoted "Unpaid interest."  Unlike the treatment afforded Debtors' judgment, LCSB also credited all payments received on behalf of the Debtors towards the Cone judgment.  From November 14, 2000 to the date of bankruptcy, Cone paid, through garnishments, a total of $58,044.  However, the issue in this case is not the Cone balance, but rather whether any of the Cone garnishments should have been applied to Debtors' judgment.

On August 9, 2005, the Lea County court allowed Yates Petroleum Corporation to interplead money owed to Tom Cone. Exhibit H.  On February 8, 2006, the state court ordered the funds disbursed to LCSB.  Yates thereafter paid $64,222 to LCSB. Exhibits I and J.

On October 13, 2005, Debtors filed the current Chapter 13 proceeding, case 13-05-20101-SR.  The Debtors' Schedule A lists 4 parcels of real estate in Eunice, New Mexico (the "Eunice properties") valued at $75,000 and their residence 10 miles south of Eunice valued at $80,000.[6]  Schedule B shows minimal personal property, all of which is exempt.  Schedule D lists LCSB as a secured creditor by virtue of its transcript of judgment, a tax

---

[6]The Court finds the actual values of real estate below.

lien to the State of New Mexico of $7,230[7], and a mortgage on the residence of $16,866. Schedule E lists no priority claims. Schedule F lists 2 credit cards totaling $12,344.

The parties stipulated to the admission of real estate appraisals without testimony of the experts. Debtors' Exhibit X-2 values the residence at $127,000, which the Court accepts. Debtors' Exhibit X-1 values the Eunice property at $37,400. LCSB's Exhibit 14 values the Eunice property at $36,400. At trial LCSB presented evidence that the Eunice property consists of 4 lots, but 3 are titled in FSPC and 1 (consisting of 2.27 acres) is jointly titled in Floyd Sims and FSPC. Debtor's appraisal fixes a value of $5,200 per acre, so the jointly held property is worth approximately $12,000, with Floyd Sims' one-half being worth $6,000.

**ISSUES**

1. Was it proper for LCSB to accrue interest on the Debtors' judgment?
2. Was LCSB's accounting for the judgments done correctly?
3. What is LCSB's secured claim?
4. What are the total unsecured claims?

**CONCLUSIONS OF LAW**

1. **Interest**

---

[7]The state filed a proof of claim for $5,815.

Page -6-

Case 05-20101-s13    Doc 70    Filed 04/03/07    Entered 04/03/07 11:26:15 Page 6 of 15

The award of interest in federal court is governed by 28 U.S.C. § 1961, which states in part:

> (a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

(Emphasis added.)

First, "[t]he use of the word 'shall' indicates the mandatory nature of such interest 'on any money judgment in a civil case.'" Peltz v. Worldnet Corp. (In re USN Communications, Inc.), 280 B.R. 573, 602 (Bankr. D. Del. 2002). (Citations omitted.) See also Resyn Corp. v. United States (In re Resyn Corp.), 945 F.2d 1279, 1284 (3rd Cir. 1991)(Although order "suggests" that IRS was not entitled to interest on fraud penalties, the Third Circuit held that fraud penalties would accrue interest under 28 U.S.C. § 1961.); United States v. Michael Schiavone & Sons, Inc., 450 F.2d 875, 876 (1st Cir. 1971)("Regardless of whether the judgment itself contains a specific award of interest, once final judgment has been entered in a civil suit in a federal court the prevailing party becomes a judgment creditor and is entitled to post-judgment interest under

Page -7-

the mandatory terms of 28 U.S.C. § 1961.")(Citation omitted.); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10 Fed. Prac. & Proc. Civ. 3d § 2664 (Section 1961 makes the allowance of interest mandatory from the date judgment is entered. Interest is mandatory regardless of what was demanded in the complaint.)

Second, the courts uniformly hold that bankruptcy courts are units of the district court under 28 U.S.C. § 151[8] so 28 U.S.C. § 1961 applies to bankruptcy court judgments. See Resyn Corp., 945 F.2d at 1284; Pester Refining Co. V. Ethyl Corp. (In re Pester Refining Co.), 964 F.2d 842, 849 (8th Cir. 1992); Ocasek v. Manville Corp. Asbestos Disease Compensation Fund, 956 F.2d 152, 154 (7th Cir. 1992); In re Godsey, 134 B.R. 865, 867 (Bankr. M.D. Tenn. 1991). Compare Jones v. Wilson Indus., Inc. (In re Jones), 804 F.2d 1133, 1143-44 (10th Cir. 1986)(Without discussion of the issue, the Tenth Circuit remanded a case to bankruptcy court with instructions to add interest pursuant to 28 U.S.C. § 1961).

Third, Debtors argue that Judge McFeeley intentionally awarded no interest in the Section 523 adversary proceeding

---

[8] 28 U.S.C. § 151 provides:
In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

because the transactions under the Master Business Agreement were based upon prepaid interest and an award of interest on the judgment would therefore give a double reward to LCSB. This Court has reviewed the Memorandum Opinion and finds no such finding or inference. However, even if this were true, the clear language of 28 U.S.C. § 1961 mandates an award of post-judgment interest.

Therefore, the Court concludes that it was proper for LCSB to accrue interest on its judgment against the Debtors.

2. **LCSB's Accounting**

In this case, LCSB has two judgment debtors, the Debtors and Tom Cone, and each judgment debtor owed two debts to LCSB. The Debtors owed the amount of the nondischargeable debt ($329,732), which was joint and several liability with Tom Cone, and they owed a separate debt to LCSB for the fees and costs awarded against them ($55,610). Tom Cone owed the amount of the nondischargeable debt ($329,732), which was joint and several liability with the Debtors, and an additional $30,692 for a total of $360,424[9], plus the fees and costs against him in the amount of $16,989. Therefore, Cone had a joint liability of $329,732 and a separate liability of $47,681 accruing interest at 8.75%. The Debtors are not liable for the fees and costs awarded against

---

[9] The Debtors' principal obligation was only the non-dischargeable portion of the debt to LCSB; Cone was liable for the entire FSPC debt to LCSB.

Cone. Similarly, Cone is not liable for the fees and costs awarded against the Debtors.

The first payment on Cone's separate debt was made on November 20, 2003, or 3 years and 6 days after entry of the judgment. By that time, $12,585 interest had accrued on the separate debt. So, on November 20, 2003, Cone's separate debt was $60,266 with interest continuing to accrue. The total amount of Cone garnishments made between November 20, 2003 and the bankruptcy were $58,044. This demonstrates that Cone's separate debt was never paid in full.

> In the absence of a controlling statute, we answer the first question [what is the proper allocation to be made of a partial payment on a debt when the payor has two obligations to the payee, one a separate obligation and the other a joint and several obligation for a portion of the entire amount] by adopting the generally accepted common law rules. Specifically, when a debtor who is solely and individually liable for a debt and concurrently liable, jointly and severally with one or more co-obligors, for a portion of that debt, makes a payment insufficient to satisfy the entire debt, under the general rule, the payment will be applied, as between the two debts, as follows: (I) if there is a controlling agreement between the debtor and the creditor, the payment shall be applied as provided in the agreement; (ii) if there is no controlling agreement, but the debtor, at or before the time of payment, indicates an intent as to how the payment should be applied, that intent shall be followed; (iii) if there is no controlling agreement and the debtor has not adequately designated how the payment should be applied but the creditor made a definite election, within a reasonable time after receipt of the payment, as to how to apply the payment, the creditor's election will govern; and (iv) if there is no controlling agreement and neither the debtor nor the creditor has made a clear, timely designation, the presumption is that the payment should be credited first to the

Case 05-20101-s13    Doc 70    Filed 04/03/07    Entered 04/03/07 11:26:15 Page 10 of 15

>      separate debt, with any remainder being allocated to
>      the joint and several obligation. See generally 60
>      Am.Jur.2d, Payment §§ 94-113, 119 (1987); 70 C.J.S.
>      Payment §§ 36-54 (1987).

Jorgensen v. Aetna Casualty & Surety Co., 769 P.2d 809, 811-812 (Utah 1988). See also Wischkaemper v. Massey, 70 S.W.2d 771, 772 (Tex. App. 1934)("The rule is that where a debtor is alone liable on one debt and jointly liable upon another, a payment by him or for him should be applied to his individual debt.)(Citation omitted.); Richard A. Lord, 28 Williston on Contracts § 72:21 (4th ed.)("A sole debt rather than a joint debt of the debtor will be treated as paid.")

All payments received by LCSB were involuntary payments[10]. As a general rule, a creditor may apply involuntary payments as it sees fit. Covey v. Commercial Nat'l Bank of Peoria, 960 F.2d 657, 662 (7th Cir. 1992); Odell v. United States, 326 F.2d 451, 456 (10th Cir. 1964); Automotive Finance Corp. v. Barthelmes (In re Barthelmes), 318 B.R. 364, 368 (Bankr. D. S.C. 2004) (general rule concerning allocation of payments by debtor is not applicable when payment is involuntary). In this case, we have no evidence that Tom Cone attempted to direct the payments' applications; however, even if he did, LCSB had a right to apply the payments to its benefit. See Weinstein v. Park Funding

---

[10] A "voluntary payment" is one "made by a debtor of his own will and choice, as distinguished from one exacted from him by process of execution or other compulsion." Black's Law Dictionary 1129 (6th ed. 1990).

Page -11-

Corp., 879 P.2d 462, 465 (Colo. App. 1994)(Equity requires courts to apply proceeds from involuntary collections in a manner which provides the creditor the greatest opportunity to recover payment for the full debt.) And, the best way LCSB could apply the payments would be entirely to the separate debt, leaving two sources of payment for the joint debt. See also Barthelmes, 318 B.R. at 370 (Debtor with nondischargeable debt from selling vehicles out of trust does not have clean hands and cannot ask the Court to use its equity powers under Section 105 to allocate payments to reduce nondischargeable portion of debt.)

In this case, LCSB applied Cone's payments to his separate debt. LCSB had no duty to credit the Debtors with any payments on behalf of Cone until Cone's separate debt was paid. It never was. LCSB correctly accounted for Debtors' judgment on Exhibit 23. Debtors' debt to LCSB on October 7, 2005 was $378,491.

3. **LCSB's Secured Claim**

Debtors argue that the full value of the Eunice properties, a portion of their homestead, and the funds on deposit from Yates Petroleum secure LCSB.

Bankruptcy Code Section 506 governs secured claims. That statute provides, in part:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest <u>in the estate's interest in such property</u>, or to the extent of the amount subject

> to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(Emphasis added.)

> The first sentence of Section 506(a) states that an allowed claim is a secured claim to the extent of "the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a). An interpretation of this sentence necessitates a two-step analysis. First, a court must determine the "estate's interest in such property," before it can then ascertain the "value of such creditor's interest in the estate's interest." See id.

In re Maddox, 200 B.R. 546, 551 (D. N.J. 1996). If the estate has no interest in a piece of property, such as collateral belonging to a third party, then the creditor's claim is considered unsecured as to the debtor, although it can be considered a secured claim of the person owning the collateral. PSI, Inc. of Missouri v. Aquillard (In re Senior-G & A Operating Co., Inc.), 957 F.2d 1290, 1301 (5th Cir. 1992); In re May, 194 B.R. 853, 858 (Bankr. D. S.D. 1996)("Property that secured a claim against the debtor that was never a part of the bankruptcy estate, such as assets of a third party, will not, of course, be included in the creditor's secured claim for plan treatment.")(Citation omitted.)

Case 05-20101-s13    Doc 70    Filed 04/03/07    Entered 04/03/07 11:26:15 Page 13 of 15

The estate's interest in the Eunice properties is only $6,000, so LCSB will be considered secured by that amount in the Eunice properties. Next, the Debtors have claimed a $60,000 homestead in their residence and would be able to avoid LCSB's lien to that extent. <u>See</u> Section 522(f). The amount of LCSB's lien on the homestead which is unavoidable is calculated as follows:

| Value of homestead | | | $127,000 |
|---|---|---|---|
| Less: | 1st Mortgage | $16,137 | |
| | Tax lien | 5,815 | |
| | Exemption | <u>60,000</u> | |
| Total deductions[11] | | | <u>$81,952</u> |
| Equity available for LCSB lien | | | <u>$45,048</u> |

Finally, LCSB may have had a lien on the funds on deposit with the Lea County Court, but such a determination is not necessary. Floyd Sims had no interest in those funds on deposit, they were garnishments of Tom Cone's interests. Therefore, the estate's interest in the property was zero, and the creditor's interest in the estate's interest was zero. LCSB's total secured claim is $51,048.

4. **Total Unsecured Claims**

---

[11] Unlike the calculations for the best interests of creditors test, closing costs and transaction fees are not deducted when computing Section 522(f) impairment. <u>Sheth v. Affiliated Realty & Management Co. (In re Sheth)</u>, 225 B.R. 913, 918-19 (Bankr. N.D. Ill. 1998).

Page -14-

LCSB has a total claim of $378,491, of which $51,048 is secured. This means that LCSB has an unsecured claim of $327,443. The Debtors have other unsecured claims of $12,344, for a total of unsecured claims of $339,787.

**CONCLUSION**

Debtors' debts exceed the limits of Section 109(e) and the case will be dismissed by separate order.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

copies to:

James A Askew
Attorney for LCSB
PO Box 1888
Albuquerque, NM 87103-1888

Shay E Meagle
Attorney for Debtors
PO Box 30707
Albuquerque, NM 87190-0707

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Case 05-20101-s13    Doc 70    Filed 04/03/07    Entered 04/03/07 11:26:15 Page 15 of 15